Good morning. May it please the court. My name is Jeffrey Martins, and I represent the petitioner in this matter, Mr. Sukhwinder Singh. And I'd like to reserve two minutes of my time for any rebuttal. Sure. Mr. Singh is not contesting whether or not irrelevant or immaterial information, like a date and place of birth, can be used in a credibility determination. Under the Real ID Act, any discrepancy, regardless of whether it reflects the demonstration of a well-founded fear or the demonstration of refugee status, can be used in assessing an individual's credibility. Let me ask you about something. I suspect that the mental process for evaluating credibility is more holistic in real life, that the I.J. decides whether he believes this guy based on all his experience with applicants and applicants from the same country and the individuals, how the individual seems to him in a lot of ways where he acts on hunch. And then he tries, after a feeling that way, to identify what in the testimony gave him the feeling. And some of the things that he mentioned don't look that impressive. But the driver's license, they had trouble getting around. Why would your mother apply for no, that was the voting card. The theory here was, well, they put down the wrong age, different age on the driver's license because it was old enough. But I've never seen a government official and I've never heard an asylum case where any government official put down a different age just because it would be a legal age. I can't quite imagine me going to the Department of Motor Vehicles and getting a license that's old enough to drive. And I can't imagine my mother applying for it. Why wasn't that enough in light particularly of the standard of proof, which is on the asylum seeker or the to show that there wasn't substantial evidence in the record on which the IJ could have proceeded? Well, your Honor, I do believe that immigration judges, when they're assessing individuals' credibility, will consider all of their experience and other things that are perhaps not in the record. However, on appeal we can only consider what basis the judge did use for the credibility determination. And he used the driver's license. And I think part of the problem with this case and why the decision was made was that it didn't take into account the fact that these were documents that were produced in a developing country that doesn't have the same standards that we do in the United States. In a developing country that doesn't have the same standard? They have bureaucracy and paperwork? That's true. India is a bit unique in that it does have some very modern parts of the country, if you go to Delhi or Mumbai. People go to India on medical tourism. That's true. But it also has very, very rural areas that are agrarian economy, that are not sophisticated and developed. And that's the part of India where Mr. Singh is from, where that kind of sophistication and exacting document production just doesn't exist. As he testified, his mother is. Okay. Got anything specific on the Indian driver's license, why it's just a ridiculous basis? On which to make an adverse credibility determination other than that he's in a primitive area of northern India? Even if there's anything else in the record that indicates that that is the practice in India? Yeah. Why shouldn't the IJ think just on the driver's license, they haven't gotten to the election card yet? Right. Well, you know, I think part of the problem with the decision by the judge and the board in this case is that it's not considered any of the explanations that Mr. Singh offered. Well, not accepting them and not considering them are two different things. Often you listen, you consider and think, that's ridiculous. Well, I think the judge should state why he believes that the explanation is ridiculous, otherwise there's no way to know the basis of the decision. I appreciate your point that when you deal with some developing countries and especially the part of town where he says he's from, that there may be inaccuracies in identity documents. I accept that. I think that's a fact. But the problem that I have with your case is that there are various documents submitted in this case. And the documents conflict with each other. From the IJ's standpoint, identity is critical. He's got to figure out who this guy is, what his date of birth is. And so the IJ listened to the explanations that were provided with regard to the discrepancies in various documents, and there wasn't any way for the IJ to pull it all together. The explanation that the IJ gave, I have a hard time finding that that's not well supported, because as the IJ said, with many documents contradicting themselves in this case, the court does not know whether this respondent was actually born on this date, May 8, 1980, as he claims, and where he was born, and there wasn't any way to figure it out. Because there's this document, it says this, he's got an explanation. Second document says something different, he's got an explanation for that. How is the IJ supposed to reconcile it? What the IJ did in this case is he pointed to one potential document that would have provided that level of reliability to give him comfort, and that's the passport. So explain to me, with that situation and with various conflicting documents, how it's unreasonable not to say, well, where's your passport, and could you give that to me, or some kind of documents on that level to reconcile all of these inconsistencies. Well, what the law requires regarding corroborating evidence like a passport is that it has to be reasonably available. And Mr. Singh explained that he did not have his passport, so he couldn't provide it to the court. And I think the judge's insistence on the passport being the only document that could have sufficiently corroborated his identity really puts Mr. Singh in kind of a no-win situation, where the only document that the court said would be adequate sufficiency to establish his identity is not available. That's only so because his other documents look phony. Well, there was no finding by the judge that they were not fraudulent documents. Right. They did have different ages on them. But Mr. Singh gave, I think, what were reasonable explanations for the discrepancies in those documents. So I think your argument, then, in the face of all this conflicting evidence, the I.J. and with the explanation that he didn't have access to his passport, the I.J. should have then accepted his testimony and the things that corroborated it and not give weight to the items that were conflicting. That's your position, essentially, right? To some degree, yes, Your Honor. But I think there is no requirement for the judge or the board to accept an explanation. But I think they have to at least give it a considered explanation for why they're rejecting it, if they're not going to accept it. I don't know that we need that. I think we have a case. The name slips my mind at the moment. But what it says is the I.J. is not required to provide an express point-by-point rejection of the explanation. I'm not sure what case the board is thinking of either. I'll have it for you in a moment. Okay. But I think when an explanation for a discrepancy is eminently reasonable as the one that Mr. Singh provided regarding these documentations, then before the judge can reject those documents, he should at least explain why he's not accepting that explanation. So I'd like to reserve some time for rebuttal. Maybe I should stop now, then. Certainly. Thank you. Okay. Thank you. We'll be able to respond in rebuttal to this case here. Here it is. Risk, R-I-Z-K versus Holder. If you happen to have that in the materials you brought, maybe you could talk a little about risk on your rebuttal. I'll do my best, Your Honor. Thank you. Good morning. Good morning. May it please the Court, Todd Cochran on behalf of the Attorney General. The Court has denied the petition for review here because the petitioner failed to credibly establish his identity. And this Court in the Fairview-Ashcroft has recognized that his eligibility for asylum depends upon the credible establishment of his identity. And as the Court pointed out, the petitioner put a number of documents into the record attempting to establish his identity, which had conflicting dates, birth dates on a couple of them. Counsel, let me ask you about the difficulties I had with your side of the case. Yes, Your Honor. That risk seems really strong for your side of the case, but then we've got a whole bunch of Ninth Circuit cases that seem to be in tension with it, where the I.J. doesn't talk enough about why he thinks this or that is bad. And on the passport, we have some cases that say, well, failure to produce a passport isn't all that persuasive. Why is that? Because a lot of times the alien smugglers hold on to them, don't give them back. Could you address those cases that seem to suggest the opposite of risk, that the I.J. does need more of an explanation? Well, I think, you know, the immigration judge is required to provide some explanation, certainly for considering rejecting the position. And in this case here, the immigration judge, you know, expressed on the record his particular problems with each piece of evidence, and noted they were all conflicting with one another, and essentially he wasn't able to determine which was the truth, which was his actual birthday, who he actually was. And because he couldn't determine who Mr. Singh supposedly is, he wasn't able to determine, you know, if he's eligible for asylum, what actually happened to him in India, as he testifies, if it actually happened to him or not, because he wasn't sure who he was. Did the I.J. make an adverse credibility finding in terms of his testimony in this case? Yes, the I.J. made just a general adverse credibility finding, and then because he wasn't credible, he denied asylum, withholding protection under the Convention Against Torture, Your Honor. So there was a specific adverse credibility finding, and not just an explanation of a failure to sustain his burden in approving his identity? I believe that's correct, Your Honor. I believe the immigration judge found him to not be credible. And as a result of that, it denied the applications for relief and protection. Do we have any cites you want to give us to tell us what the current state of the law is on how much the I.J. has to say about the explanation? I think the RISC case, as Your Honor mentioned, is the controlling one there. Unless the Court has any additional questions. Well, you know, it's not in some sympathetic situation as to petitioners, because I suspect many people in these undeveloped parts of the world have a hard time, because their documents do, in fact, conflict. So in this case, you've got his testimony, you've got his birth certificate, his dad put in a declaration, all providing inconsistencies. And I suppose what the government would point to are the documents that contradict that. That's what it boils down to. There's also some issues with some of those documents, Your Honor. The affidavit his father put in is the same, is consistent with the date that the petitioner testified to as his birthday. However, the affidavit from his father has some questions about it. It doesn't discuss at all the events that Mr. Singh claims he was subjected to in India. It also was in English, and Mr. Singh testified that his father doesn't speak English. So it seems to be lacking some of the ---- I'm curious about another aspect. I can't remember, did the IJ discuss the fact that this fellow claims to be a Sikh and his persecution was, as I remember, in part because of his Sikh activism, but he doesn't practice the five Ks? No, I believe that his, it was a political opinion, not based upon Sikhism. I think he was against the political party in India. He was a farmer, a member of the Lakhdal party, I believe, and he was adverse to the Congress party in India, and that was the basis of his claim, not the religion, the Sikh religion. I have a question for you. This is a strange case. It's not as though the petitioner showed up, testified about a birth date, and then you busted him with these documents and said, ah, explain this, explain that, right? Am I right that he's the one who brought all of these documents forward, right? That's correct, Your Honor. He put these documents forward. In addition, he testified, he didn't testify, he stated to the asylum officer when he went into the country. Well, the IJ never mentioned that. Did he or did he or she? Because you emphasized that in your, I don't know if you wrote the brief, but the government emphasized that in its brief, but then when I went back to look at the IJ's decision and the BI's decision, I didn't see any mention. It's probably a fair point, Your Honor, yes. I mean, I found that pretty compelling, and the way it was presented in the brief, it seemed compelling, but it didn't line up with the explanation the agency gave. So let me just forget about that. The guy shows up, he stated in his application, this is my birth date, he testifies to that, his father confirms that, he has a birth certificate, probably the best evidence of your birth date. If he just stopped there, there wouldn't be any issue, right? So why the fact that he voluntarily tried to say, well, if you need more, here are some other things, and then he just, the IJ just relies entirely on discrepancies in his other documents. That seems like an odd case to say, I just don't believe you, sorry. Well, the immigration judge, as you know, is required to consider all the evidence that he puts forward, and the petitioner here, yes, he had the testimony, he had the birth certificate, which appeared to be not an official document. I think it was just registered in 2008. It didn't have a seal on it. He put that forth, and he put these other documents under the record, which, you know, complicated the issue. The IJ didn't know what to believe, because I think, as Judge Kleinfeld mentioned at the outset here, these immigration judges, they don't go into this in a vacuum. They see a lot of these cases, and yes, they have to judge the facts in this particular case, but they work against that backdrop, and they see a lot of cases where there are all these different collecting documents, and they're not sure what to believe in these cases. So that certainly is working in the background here, where, you know, the petitioner put these documents in, it sort of complicates the issue, and he wasn't sure what to believe. And so being that it's the petitioner's burden to credibly establish his identity, the petitioner himself, you know, complicated the issue and made it difficult, and the immigration judge found him to not be credible as a result of all that. Did the petitioner bring forward these other documents for some other purpose, or were they ñ was he just trying to satisfy the IJ as to who he, you know, what his identity was? You know, I don't know the answer to that, Your Honor. I believe that he just put these documents into the record at the hearing. I don't know if he offered them for a different purpose or not. It certainly seems as if he did it, it certainly establishes his identity, and that seems to be ñ that's the sole issue, really, in this case. I don't know what other purpose he would have had for putting those documents in. What do you make of the fact that the IJ indicated that the passport would establish his real identity and point it to that, but he explained that he doesn't have access to that, or he didn't have access to it because in Guatemala the smugglers took his passport and apparently never gave it back to him? Well, that's petitioner's testimony regarding the passport, and the IJ found him to not be credible, as we all know. He did ask ñ he did suggest the passport was a document that could establish his identity. The board also noted that the passport or some similar document established his identity. The petitioner said it was taken away from him. That was the only explanation he offered. He didn't ask for an opportunity to go get a replacement. He didn't ask for a continuance. He was represented by counsel the entire time at the hearing. He never asked for an opportunity to do something like that. How long had he been in the U.S. between coming here and his hearing? I believe he entered sometime in the 2006 time frame, Your Honor. Something like that. American passports get stolen from travelers a lot because they're valuable on the black market, and what people do is go through a huge song and dance and get a replacement passport. I don't suppose there's anything in the country report or the testimony ñ or in the I.J.'s decision about the opportunity to get a replacement passport. Was there? I don't believe so, Your Honor, no. If the court has no other questions, and the court should deny the petition for review because substantial evidence supports the agency's decision for the reasons discussed today in the answering brief, the court should deny the petition for review. Thank you. Thank you, counsel. Your Honor, I did have a chance to just briefly look at risk v. Holder, and the only thing I'll note about that case is that the court did grant and remand the petition with a finding that no reasonable fact finder would have concluded what the judge and the board did in that case. As far as a point-by-point refutation of a credibility finding, I really can't comment to that. But I think that it does leave the applicants for asylum in a very difficult position of not knowing why their application is denied. But I want to comment on what the standard is for what we have to require of the I.J. in its explanation. Right. And I don't know if that case had a standard for review or not. It could be. I just am not familiar with the case. But I think, you know, essentially this case is about how much latitude a judge has to rely on any kind of discrepancy. And I think it's not reasonable for the judge to say that any tiny technical error that he finds is the basis for a credibility denial. Otherwise, we're going to have a situation where legitimate applications for asylum are denied on these kinds of technicalities. And I think that's really a poor way to determine asylum eligibility. I think that at minimum the court should adapt a standard that any discrepancy has to reflect on the applicant's veracity in some way. I'm not sure we're talking about the same case. Okay. RISC says here, because the record shows that RISC did have ample opportunities to reconcile the numerous contradictions in his testimony, but failed to offer a reasonable and plausible explanation for them, the I.J.'s adverse credibility determination  We therefore deny his petition for review. I could have been looking at a different case, Ron. I just tried to look it up very quickly. Thanks. Thank you. All right. Thank you very much, Tom. The matter is submitted for decision by this court.
judges: Kleinfeld, Nguyen, Watford